**Eugene T. KING, Jr., Plaintiff–
Appellant,**

v.

**John R. SIMPSON, Eastern Regional
Commissioner, United States Parole
Commission, Defendant–Appellee.**

Docket No. 98–6282.

United States Court of Appeals,
Second Circuit.

Argued June 29, 1999.

Decided Aug. 20, 1999.

Eugene T. King, Jr., pro se, Brooklyn, NY, for Plaintiff–Appellant.

David L. Goldberg, Assistant United States Attorney, (Zachary W. Carter, United States Attorney, Eastern District of New York, Deborah B. Zwany, Assistant United States Attorney, on the brief) Brooklyn, NY, for Defendant–Appellee.

Before: KEARSE, STRAUB and POOLER, Circuit Judges.

POOLER, Circuit Judge:

Eugene T. King, appearing *pro se,* appeals from the November 4, 1998, judgment of the United States District Court for the Eastern District of New York (Carol Bagley Amon, *Judge* ) dismissing his civil rights complaint against defendant John R. Simpson.

## BACKGROUND

Plaintiff filed this civil rights lawsuit on January 3, 1997, in the United States District Court for the Eastern District of New York. King, who was formerly in federal prison, contends generally that Simpson, who is Eastern Regional Commissioner of the United States Parole Commission, violated his Fifth Amendment due process rights and liberty interests when Simpson delayed for five months King's release on parole. According to the complaint, King was in pre-release custody at Le Marquis Community Corrections Center in New York City in May 1996, and parole officials had granted him an "effective parole date" of May 16, 1996. Pursuant to relevant regulations, the parole commission approves effective dates of parole after conducting an in-person hearing or reviewing the prisoner's records. 28 C.F.R. § 2.1(h) (1998). Before King's parole date, prison officials on May 8, 1996, remanded King to federal custody at the Metropolitan Deten-

tion Center ("MDC") in Brooklyn because they alleged that King violated a condition of the Le Marquis program when he refused to pay subsistence. Prison officials issued an institutional incident report regarding the alleged violation.

King was in MDC on May 16, 1996, but prison officials did not release him on parole. According to King, "the Commission ordered the Bureau of Prisons not to release plaintiff from custody until the [Disciplinary Hearing Officer ('DHO')] rendered a decision on the incident report which led to plaintiff's remand to federal custody." Compl. ¶ 7. King wrote a letter dated June 12, 1996, to defendant Simpson requesting King's immediate release on parole. *Id.* ¶ 11. King claimed that Simpson violated 28 C.F.R. § 2.34(a), which set two conditions for rescinding parole, neither of which applied to his case.[1] By letter dated June 19, 1996, Patricia D. Vines, a case analyst for the Parole Commission, informed King that "once you have a DHO hearing your case manager must submit the report to this office. At that time, we will review the case and a decision made [sic] as to whether your parole should be rescinded." *Id.* ¶ 12.

Dissatisfied with this response, King filed a petition for a writ of habeas corpus in federal district court on July 3, 1996. On September 27, 1996, the district court issued an order to show cause directing the United States Attorney General or United States Attorney for the Eastern District of New York to demonstrate why King should not be released. The order to show cause was returnable on November 18, 1996. Because of subsequent events, however, King voluntarily withdrew the petition.

King's hearing before the prison's DHO took place on August 14, 1996. Compl. ¶ 14. The hearing officer found King guilty of violating a condition of the community program and sanctioned him with the loss of 30 days of good time. Then, on October 16, 1996, prison officials released King from custody and gave him a certificate of parole stating that King was "PAROLED nunc pro tunc on July 14, 1996." King alleges that "[n]o explanation has been given plaintiff why he was given a Certificate of Parole stating that plaintiff was paroled on July 14, 1996 but only released on October 16, 1996, 'nunc pro tunc.'" Compl. ¶ 16.

On March 19, 1997, defendant moved to dismiss King's federal lawsuit on four grounds: absolute immunity, qualified immunity, King's failure to allege Simpson's personal involvement in the alleged violation of rights, and plaintiff's failure to properly serve Simpson. By a memorandum and order dated October 30, 1998, Judge Amon granted defendant's motion on absolute immunity grounds and dismissed King's complaint pursuant to Fed. R.Civ.P. 12(b)(6). Specifically, Judge Amon held that "[b]ecause the law in this circuit is that decisions made by parole board officials concerning the grant, denial, or revocation of parole are considered quasi-judicial, defendant here enjoys absolute immunity from this suit for money damages." King now appeals.

## DISCUSSION

### I. Standard of review

 Appellate review of a grant of dismissal for failure to state a claim is *de novo.* *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). The court may not

---

1. The regulation is entitled "Rescission of parole" and states in relevant part:

 When an effective date of parole has been set by the Commission, release on that date is conditioned upon continued satisfactory conduct by the prisoner. If a prisoner granted such a date has been found in violation of institution rules by a disciplinary hearing officer or is alleged to have committed a new criminal act at any time prior to the delivery of the certificate of parole, ... the Regional Commissioner may reopen the case and retard the parole date for up to 90 days without a hearing....

 28 C.F.R. § 2.34(a) (1998).

dismiss a complaint under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotation marks and citation omitted). In the course of our review, we accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of plaintiff. *See id.* "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (internal quotation marks omitted). With this generous standard in mind, we examine King's complaint.

## II. Immunity

In its motion to dismiss King's complaint, the government argued in the alternative that Simpson was entitled to either absolute or qualified immunity from suit. Judge Amon concluded that absolute immunity applied. However, at this stage of the proceedings, dismissal on either ground is premature absent additional development of the record.

We note that on this appeal, King does not dispute that he seeks monetary rather than injunctive relief. Rather, King argues that he did not intend for Simpson himself to pay damages. Although such a limitation would seem to obviate any absolute or qualified immunity defense, we have two difficulties with this argument. First, it is contrary to the complaint, which states that King is suing Simpson in both his individual and his official capacities. King is of course entitled to withdraw his damages claim against Simpson in his individual capacity, but we see no indication that he formally has done so. Second, if in fact King seeks to assert his damages claim against Simpson not in Simpson's individual capacity but only in his official capacity, then sovereign immunity likely would bar King's lawsuit because a suit against a federal employee in his official capacity is a suit against the government

and Congress has not waived the government's sovereign immunity, for example under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, *et seq.,* from lawsuits based on constitutional claims. *See generally,* 28 U.S.C. § 1346(b); *FDIC v. Meyer,* 510 U.S. 471, 477–78, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *Chen v. United States,* 854 F.2d 622, 625–26 (2d Cir.1988) (government's waiver of sovereign immunity under FTCA does not extend to claims based on "direct violations of the Federal Constitution ... or of federal statutes or regulations standing alone").

### A. Absolute immunity

▮ The doctrine announced in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) permits individuals to recover money damages from federal actors who have deprived them of Constitutional rights. However, in "rare circumstances" public policy requires absolute immunity to protect these actors. *Scotto v. Almenas,* 143 F.3d 105, 110 (2d Cir.1998). It is well established, for example, that judicial actors enjoy absolute immunity. *See id.* Government officials performing prosecutorial acts also are absolutely immune from suit. *See id.* We have held that parole board officials, too, are entitled to absolute immunity when they " 'decide[ ] to grant, deny, or revoke parole,' because this task is functionally comparable to that of a judge." *Id.* at 111 (quoting *Sellars v. Procunier,* 641 F.2d 1295, 1303 (9th Cir.1981)); *see also Montero v. Travis,* 171 F.3d 757, 761 (2d Cir.1999) (*per curiam* ) (same). In a similar vein, "[p]arole officers also receive absolute immunity for their actions in initiating parole revocation proceedings and in presenting the case for revocation to hearing officers, because such acts are prosecutorial in nature." *Scotto,* 143 F.3d at 112.

▮ In determining whether an official is entitled to absolute immunity, we

must take a functional approach and look to the particular acts or responsibilities that the official performed. *See Montero,* 171 F.3d at 761. Thus, in *Scotto,* no absolute immunity attached to the actions of a parole officer who recommended that a warrant be issued for a parolee's arrest because the function was administrative rather than adjudicative or prosecutorial and was not integrally related to the judicial process. *See Scotto,* 143 F.3d at 111–13. In *Montero,* however, absolute immunity applied to the actions of a parole commissioner serving the "quasi-adjudicative function" of revoking parole. *Montero,* 171 F.3d at 761. Our precedent therefore instructs us to examine the nature of the actions that the parole officer performed before deciding what immunity, if any, attaches to the actions. The court must conduct "[s]ome factual inquiry" to determine if the duties of the defendants were judicial or prosecutorial, which entitles them to absolute immunity, or administrative, which may entitle them to qualified immunity. *Stewart v. Lattanzi,* 832 F.2d 12, 13 (2d Cir.1987) (*per curiam*).

In this case, Judge Amon conducted no discernible factual inquiry into the nature of Simpson's responsibilities or alleged actions. The district court instead held that although Simpson's decision to retard King's parole date did not "precisely" describe a grant, denial or revocation of parole, what King alleged was "functionally similar." We cannot agree and hold that the current record is inconclusive. Taking the allegations of the complaint as true, which we must, Simpson rescinded King's effective parole date even though relevant regulations did not permit the delay of King's release under these circumstances. Compl. ¶¶ 11–12. It is unclear whether Simpson's alleged action in retarding, or delaying, King's effective parole date pending a hearing on the institu-tional incident report filed against him was an adjudicative function like denying or revoking parole or merely an administrative function like scheduling or making a recommendation.

This case is distinguishable from *Anton v. Getty,* 78 F.3d 393 (8th Cir.1996), upon which the district court relied. The Eighth Circuit in *Anton* held that a parole commissioner's decision to delay a prisoner's presumptive parole date was adjudicative, but there was no question that the relevant regulation, 28 C.F.R. § 2.12(d), permitted this action. *See Anton,* 78 F.3d at 396. In contrast, King has alleged that relevant regulations did not permit Simpson's decision to retard his effective parole date. Unlike an effective parole date, a presumptive parole date is set far in advance of a prisoner's scheduled release and is contingent upon the parole commissioner's finding of good conduct and preparation of an adequate release plan. *See* 28 C.F.R. § 2.12(d) (1998); *see also Green v. McCall,* 822 F.2d 284, 292 (2d Cir.1987) (holding that "the liberty interest of the presumptive parolee occupies a lower place in the inmate-liberty-interest continuum than does the interest of a parole grantee"). The regulations do not, in this case, furnish any explanation for Simpson's action, much less one that would establish that his decision to delay King's release was adjudicative in nature.

Consequently, we vacate the Rule 12(b)(6) dismissal of King's complaint on absolute immunity grounds and remand the matter to the district court for additional development of the record in whatever form the court deems appropriate.[2] In the event that Simpson's acts or functions in this matter were administrative, then the district court may address the issue of qualified immunity, which we discuss briefly below.

2. Depending upon the manner in which Judge Amon conducts proceedings on remand, she may elect to convert the Rule 12(b)(6) motion into one for summary judg-ment and give all parties "reasonable opportunity to present all [pertinent] material." Fed.R.Civ.P. 12(b)(6).

## B. Qualified immunity

A federal official performing administrative or discretionary functions may be entitled to qualified immunity rather than absolute immunity. *See Scotto,* 143 F.3d at 110. Qualified immunity shields government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). While we do not decide whether Simpson is entitled to qualified immunity, we note that King alleged Simpson violated federal regulations when he retarded King's effective parole date. This allegation, if proved, might constitute a violation of King's right to due process of law, and more facts may be necessary to resolve the qualified immunity question. *Cf. id.* at 113 (noting that Rule 12(b)(6) dismissal would not be appropriate where plaintiff alleged defendant violated plaintiff's right to be free of arrest in the absence of probable cause).

Therefore, we remand this matter for additional proceedings consistent with this opinion. Because Judge Amon dismissed the complaint on absolute immunity grounds, she did not reach defendant's additional alternative arguments that he was not personally involved in the alleged violation of King's rights or that King failed to serve defendant properly. We decline to address these issues for the first time on appeal, but the district court is free to consider them on remand.

## CONCLUSION

For the foregoing reasons, we reverse dismissal of King's complaint and remand the matter to the district court.