GOLDEN FIRST MORTGAGE CORP.,
f/k/a Golden National Mortgage
Banking Corp., Plaintiff,

v.

Mitchell H. BERGER, Esq., Stewart Dahan, Edward Dahan, Sholom "Sol" Moskowitz, Brent W. Hinds, Zakiyah S. Islam, Terri Cooper, Michael D. Towns, Rosemarie Tassielli, 21st Century Mortgage, Inc., Dahan & Associates, Inc., Dahan & Associates Mortgage Company, LLC, Dahan & Associates Credit Repair Corp., Selective Realty Inc., Hassan Abdullah, American Dream Realty, LLC, and Yank Amendola, Defendants.

No. CV 01–4549(ADS)(ETB).

United States District Court,
E.D. New York.

March 10, 2003.

Thaler & Gertler, LLP, Westbury, NY
(Harold J. Levy, of Counsel), for Plaintiff.

Newman, Fitch, Attheim, Myers, P.C., New York, NY (John F. Loccisano, Vanessa M. Corchia, of Counsel), for Defendant, Mitchell H. Berger.

Dahan & Nowick, New York, NY (David R. Taxin, of Counsel), for Edward Dahan, Stewart Dahan, Sol Moskowiz, Dahan & Associates, Inc., Dahan & Assoc. Mort. Co., LLC, Dahan & Assoc. Credit Repair Corp., 21st Century Mort. Inc., defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On July 9, 2001, Golden First Mortgage Corp., f/k/a Golden National Mortgage Banking Corp. ("Golden First" or the "plaintiff") commenced this diversity action by filing a complaint alleging fraud and breach of contract in regard to certain loans and the sale of certain properties. Presently before the Court is (1) a motion to dismiss the amended complaint by Stewart Dahan, Edward Dahan, Dahan & Associates Credit Repair Corp. ("Dahan & Associates"), Sholom "SOL" Moskowitz ("Moskowitz") and 21st Century Mortgage, Inc. ("21st Century") (collectively, the "Dahan defendants") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."); and (2) a motion to dismiss the amended complaint by Mitchell H. Berger, Esq. ("Berger") pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6) or, in the alternative, to transfer venue to New Jersey.

## I. BACKGROUND

The following facts are taken from the amended complaint dated February 22, 2002, which the Court takes to be true. Golden First is a mortgage banking corporation located in Melville, New York and licensed to transact business in New Jersey. Golden First provides first mortgages for home buyers.

In or about 2000, Golden First began noticing that a number of properties in and around the area of Elizabeth/Newark/West Orange were in default. After reviewing the files for these properties, the plaintiff discovered facts common to all of the non-performing mortgages. The files showed that Edward Dahan of Dahan & Associates was the contact person on most of the non-performing mortgage loans. A review of the files also showed that most of the non-performing loans were originally signed by Moskowitz who operated and was the president of 21st Century. Edward Dahan acted as 21st Century's agent and processed the mortgage loans on behalf of 21st Century. Dahan & Associates and 21st Century shared an office at 443 Northfield Avenue, Suite 300, in West Orange, New Jersey and also shared the same phone and fax numbers. The letterhead and forms for 21st Century indicated as such. Indeed, Moskowitz had his attorney Berger amend 21st Century's Certificate of Incorporation to change its initial registered office to the business offices of Dahan & Associates.

The amended complaint identifies four transactions that give rise to the alleged fraud. In all of the transactions, Dahan & Associates introduced Berger to the home buyers. As both closing agent for the title company and as attorney for the buyers, Berger conducted all of the closings on the non-performing mortgages at his office. None of the property sales involved a real estate broker or a sales commission. In addition, the sales contracts did not require a down payment, money deposit, or set forth any consideration for the sales contracts. Most importantly, after purportedly paying thousands of dollars in out-of-pocket closing costs and equity payments at and before the closings, the home buyers immediately abandoned the properties and defaulted on their monthly payments. None of the buyers ever occupied

their properties, which was required under the terms of the mortgage loans.

## A. The Park Street Property

On or about February 8, 2000, defendant Zakiyah S. Islam ("Islam") entered into a sales contract with defendant Selective Realty, Inc. ("Selective Realty"), the seller, to purchase property located at 555 South Park Street, in Elizabeth, New Jersey (the "Park Street Property") for a price of $160,000. Both Edward Dahan and Moskowitz interviewed her and provided her with the loan application. Golden First claims that Dahan & Associates and 21st Century never signed the disclosure statements on her loan application, in violation of the New Jersey State Banking Department regulations. The mortgage loan was provided by 21st Century.

According to the HUD-1 Closing Statement prepared by Berger, under the "Cash From Borrower," Islam was required to pay a sum of $27,521.83 at the time of the closing. At or prior to the closing, 21st Century sold the mortgage loan to the plaintiff. On or about April 25, 2000, Berger conducted the closing at his office. Golden First alleges that Berger's office notarized the signatures of Islam and Selective Realty either with false identification or in their absence. Although the HUD-1 Closing Statement required Islam to pay a sum of $27,521.83 at the time of the closing, Islam never paid the amount at that time. Furthermore, at the closing, Islam signed an occupancy agreement certifying to 'Golden First that she would occupy the Park Street Property as her primary residence. However, Islam never moved in or occupied the property.

The following month, Islam defaulted on her loan and failed to make her first monthly payment of $1,533.94. At about the time of her default, Islam had another closing in Berger's office for property located at 25 Mountain Drive, in West Orange, New Jersey (the "Mountain Drive Property"). The purchase price for this property was in the amount of $685,000.

After Islam defaulted on her Park Street Property mortgage loan, Golden First could not locate Selective Realty or Islam. The plaintiff contacted Edward Dahan to inquire whether he had any information concerning Islam or her whereabouts. Edward Dahan responded that he had no further information and could not help Golden First locate her. However, at this time, Dahan & Associates was involved in securing a mortgage for a prospective purchaser for Islam's Mountain Drive Property.

Within four months, Islam was again in Berger's office closing a third deal and selling the Mountain Drive Property. According to the plaintiff, the signature for Islam for the various closings at Berger's office were completely different. Furthermore, while the spelling of her name for the closing of the South Park Street Property was "Zakiyah S. Islam," the spelling of her name for the closing of the Mountain Drive Property was "Zakiyya Islam." Berger's office notarized both signatures.

## B. The Dewey Street Property

On or about February 8, 2000, the same day the sale contract for the South Park Avenue Property was executed, defendant Terri Cooper ("Cooper") entered into a sales contract with Selective Realty to purchase property identified in the complaint as the "Dewey Street Property" for a price of $115,000. The plaintiff claims that Dahan & Associates and 21st Century never signed the disclosure statements on her loan application, in violation of the New Jersey State Banking Department regulations. The mortgage loan was provided by 21st Century, and Edward Dahan acted as its representative. At or prior to the clos-

ing, 21st Century sold the mortgage loan to the plaintiff.

At the closing, Cooper signed an occupancy agreement certifying to Golden First that she would occupy the Dewey Street Property as her primary residence. Cooper never moved into or occupied the property. Cooper never made the first payment due on the mortgage loan to Golden First, thereby defaulting on the loan.

## C. The Ridge Avenue Property

On or about December 1, 1999, defendant Michael D. Towns ("Towns") entered into a sales contract with Cornelius Whitaker ("Whitaker"), the seller, to purchase property located on 88 Ridge Avenue, in West Orange, New Jersey (the "Ridge Avenue Property"). Whitaker had taken title to the property from Selective Realty. The mortgage loan was provided by 21st Century, and Edward Dahan was the contact person. Edward Dahan and 21st Century never signed the disclosure statements on his loan application, in violation of the New Jersey State Banking Department regulations.

At or prior to the closing, 21st Century sold the mortgage loan to Golden First. Before the closing, the plaintiff discovered that Towns owned property located on 93 Alexander Street, in Newark, New Jersey (the "Alexander Street Property") and still had an outstanding mortgage loan on it. As a condition to closing on the Ridge Avenue Property, Golden First required Towns to close on the sale of the Alexander Property and to satisfy his existing mortgage.

Berger prepared and signed a HUD-1 Settlement Statement on the Alexander Street Property, indicating that a closing had taken place on December 14, 1999 and that Towns had sold it to Brenda Sandiford. The HUD-1 Settlement Statement on the Alexander Street Property listed

Community Home Mortgage Corp. as the lender. According to the plaintiff, no sale or closing on the Alexander Street Property actually ever took place. On December 20, 1999, Berger sent Edward Dahan and Moskowitz a facsimile containing the HUD-1 on the Alexander Street Property. The next day, Edward Dahan and Moskowitz then faxed the HUD-1 to Golden First.

On or about December 27, 1999, Berger conducted the closing on the Ridge Avenue Property. The plaintiff believes that Berger notarized the signature of Towns and Whitaker either with fraudulent identification or in their absence. At the closing, Towns signed an occupancy agreement certifying to Golden First that he would occupy the Ridge Avenue Property as his primary residence. Towns never made the required payment at the closing and never moved into the Ridge Avenue Property.

On June 22, 2000, the Essex County Tax Assessor informed Golden First that Towns still owned the Alexander Street Property. On June 23, 2000, Golden First ran a credit report on Towns, which showed his current address being listed as 93 Alexander Street. In addition, the credit report listed the prior mortgage loan on the Alexander Property as being open and current.

A review of the HUD-1 Closing Statement on the Alexander Street Property, which Golden First demanded as an underwriting condition prior to issuing its loan, identified the loan on the property as being issued by the Federal Housing Administration ("FHA"). Golden First conducted a "Case Query" on the FHA system using the Alexander Street address. The search revealed that Brenda Sandiford, the purported purchaser of the Alexander Street Property, never purchased the property. Furthermore, the FHA records

revealed that a sale to a person identified as "Taesha Edwards" was pending as of May 16, 2000. The Case Query report identified the "Originator Name" as "Community Home Mortgage Corp."

On June 23, 2000, the same day that Golden First ran the credit report and the FHA Case Query, Maureen Flaherty ("Flaherty") of Golden First placed a telephone call to Edward Dahan and Moskowitz at their office. The phone was answered "Community Home Mortgage Corp." A few days later, Flaherty placed a second telephone call to the office and spoke with Moskowitz about the Alexander Street Property. Flaherty demanded that he repurchase the Ridge Avenue Property loan. Moskowitz responded by stating that she was "making a mountain out of a mole hill" and that he would close on the Alexander Property "soon." FHA records revealed that the property was closed on July 6, 2000.

The amended complaint alleges that when Edward Dahan and Moskowitz faxed the HUD–1 Settlement Statement to the plaintiff on December 21, 1999, they knew that the HUD–1 Settlement Statement was false because Edward Dahan was both the contact person for the loan on the Ridge Avenue Property and was contemporaneously attempting to obtain financing on the Alexander Street Property. Moskowitz placed the mortgage loan on the Ridge Avenue Property with 21st Century and placed the subsequent loan on the Alexander Property with Community Home Mortgage Corp.

#### D. The Mount Vernon Avenue Property

On or about July 1, 2000, defendant Rosemarie Tassielli ("Tassielli") entered into a sales contract with American Dream Realty, the seller, to purchase property identified in the amended complaint as the "Mount Vernon Avenue Property" for a price of $135,000. According to the plaintiff, there were two separate mortgage loans on her property. Community Home Mortgage Corp. wrote the first mortgage loan, and then sold the loan to Golden First. Subsequently, from the offices of Dahan & Associates and 21st Century, Stewart Dahan issued a second mortgage loan as an agent for defendant "IndyMac," a corporation not fully described in the plaintiff's papers.

On September 8, 2000, Berger conducted a closing, at which time Tassielli purportedly purchased and became the legal owner of the Mount Vernon Avenue Property. The plaintiff claims that Berger's office notarized the signature of Tassielli and American Dream Realty either with fraudulent identification or in their absence. Tassielli never moved into the property and defaulted on the first payment due on the plaintiff's mortgage loan.

## II. DISCUSSION

### A. The Standard under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. *See King v. Simpson,* 189 F.3d 284, 286 (2d Cir.1999); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). The Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999); *Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999). The Court must accept all factual allegations in the complaint as true and draw all reason-

able inferences in favor of the plaintiff. *See Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir.1999); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997).

The issue to consider is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *See Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995). Indeed, it is not the Court's function to weigh the evidence that might be presented at trial; instead, the Court must merely determine whether the complaint itself is legally sufficient. *Id.*

### 1. The Plaintiff's Claim of Fraud

To establish a claim for fraud, a plaintiff must demonstrate (1) a representation of a material fact, (2) falsity, (3) scienter, (4) reasonable reliance, and (5) injury. *Manning v. Utilities Mut. Ins. Co., Inc.*, 254 F.3d 387, 400 (2d Cir.2001). Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). "This exception to the generally liberal standard of pleading helps to ensure that defendants receive fair notice of allegations of fraud and to protect them from the serious harm to reputation or goodwill that can result from such allegations." *Wells Fargo Bank Northwest N.A. v. Taca Int'l Airlines*, No. 01 CV 11484, 2002 WL 31158961, *8, 247 F.Supp.2d 352, 363 (S.D.N.Y.).

 In order to satisfy the particularity requirement, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993). Although Rule 9(b) allows a plaintiff to allege fraudulent

intent generally, the plaintiff must nevertheless allege facts that give rise to a strong inference of fraudulent intent. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994). A plaintiff may establish this strong inference either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious behavior or recklessness." *Id.*

### a. The Dahan Defendants

 The Dahan defendants argue that the amended complaint fails to allege fraud with particularity as required under Fed. R. Civ. 9(b). The Court disagrees. The amended complaint provides fair notice to the Dahan defendants as to the nature of the alleged fraud, which satisfies the primary purpose of Rule 9(b). *Wells Fargo Bank Northwest v. TACA Int'l Airlines*, No. 01 CV 11484, 2002 WL 31158961, *9, 247 F.Supp.2d at 364 (S.D.N.Y.) (citing *Shields*, 25 F.3d at 1128). The 28–page amended complaint contains 241 paragraphs of detailed allegations. It contains the dates and the specific transactions involved in the fraud.

The amended complaint further identifies the properties involved and the purchase price of each property. In addition, it provides sufficient information as to how the Dahan defendants prepared false documents, which allegedly induced Golden First to purchase the mortgage loans from 21st Century. It alleges that all of the sales contracts failed to set forth any down payment, money deposit, or other consideration for the sales contract. Furthermore, the disclosure statements in the sales contracts were signed in blank, in violation of the New Jersey State Banking Department regulations.

In addition, it identifies Edward Dahan and Moskowitz as giving the home buyers the loan applications and interviewing some or all of the buyers. The amended complaint alleges that Edward Dahan was the contact person for each transaction and that 21st Century provided the mortgage loans to each purchaser. It further states that 21st Century then sold the mortgage loans to the plaintiff.

With respect to the Park Street Property, 21st Century sold the mortgage loan to Golden First. After Islam defaulted on her loan, Golden First contacted Edward Dahan to locate Islam. Edward Dahan responded that he had no information concerning her or her whereabouts. However, at the time Edward Dahan stated that he had no information on Islam, Dahan & Associates was involved in securing a mortgage for a prospective purchaser for Islam's Mountain Drive Property.

Furthermore, in the Ridge Avenue Property transaction, Edward Dahan and Moskowitz faxed to the plaintiff the allegedly fraudulent HUD–1 Settlement Statement, which indicated that Towns had sold and closed on the Alexander Street Property and listed Community Home Mortgage Corp. as the lender. On June 23, 2000, when Flaherty placed a telephone call to the offices of Dahan & Associates and 21st Century, the phone was answered "Community Home Mortgage Corp." A few days later, Flaherty placed a second call and spoke with Moskowitz. When she demanded that 21st Century repurchase the Ridge Avenue Property loan, Moskowitz responded that he would close on the Alexander Property "soon," inferring that the facsimile sent by Edward Dahan and Moskowitz was false insofar as the Alexander Street Property was never sold and closed as was indicated in the HUD–1 Settlement Statement.

Edward Dahan and Moskowitz knew that as a condition for closing the Ridge Avenue Property, the plaintiff required that Towns close the sale of the Alexander Property. As such, when they faxed the HUD–1 Settlement Statement to Golden First, they knew that it would mislead the plaintiff into thinking that the condition for closing on the Ridge Avenue Property was satisfied.

Furthermore, the amended complaint alleges that for the Mount Vernon Avenue Property, Tassielli had two separate mortgage loans. The amended complaint provides that Community Home Mortgage Corp. wrote the first mortgage loan, which was subsequently sold to the plaintiff, while Stewart Dahan, who was also president of Dahan & Associates, wrote the second mortgage loan as an agent of IndyMac. Accepting all factual allegations in the amended complaint as true and drawing all inferences in favor of the plaintiff, as the Court must, it appears that Community Home Mortgage Corp. and IndyMac both operated out of the same offices with Dahan & Associates and 21st Century.

■ Based on these allegations, the Court finds that the amended complaint contains a sufficient amount of specific allegations with regard to the Dahan defendants' alleged fraudulent activity. However, with respect to Steward Dahan, the amended complaint fails to contain any misrepresentations made by him. It states only that he acted as an agent on behalf of IndyMac and acted as president of Dahan & Associates. However, it does not identify any statements Stewart Dahan made which induced the plaintiff. Accordingly, the fraud claim is dismissed as to Steward Dahan.

Notably, the Dahan defendants contend that the alleged fraud could have been committed by the purchasers alone. Such an argument goes to the weight of the evidence set forth in the pleadings rather than their sufficiency. At this juncture,

because the Court is presently deciding a motion to dismiss for failure to state a claim, it would be improper to entertain this argument. *Internet Law Library, Inc. v. Southridge Capital Management,* 223 F.Supp.2d 474, 481 (S.D.N.Y.2002) (citing *Jubran v. Musikahn Corp.,* 673 F.Supp. 108, 112 (E.D.N.Y.1987)) ("Since the Court is bound, in the context of a motion to dismiss to [draw] all inferences in favorable to the pleader, the Court must accept the veracity of plaintiff's pleadings.").

### b. Berger

■ Similarly, the Court finds that the amended complaint provides fair notice to Berger as to the nature of the alleged fraud. The amended complaint provides that Dahan & Associates introduced Berger to the home buyers. Berger acted as both the closing agent for Dahan & Associates and as the attorney for the buyers. In the Park Street Property transaction, Berger prepared the HUD–1 Closing Statement. Golden First claims that on or about April 2, 2000, Berger conducted the closing at his office. The amended complaint indicates that Berger's office notarized the signatures of Islam and Selective Realty either with false identification or in their absence because Islam never paid the sum of $27,521.83 at the time of the closing, which was required under the HUD–1 Closing Statement. Furthermore, Berger was the closing agent for Islam for the Mountain Drive Property sale. Islam's signatures, which Berger's office notarized, for the various closings were completely different. In addition, the spelling of her name for the closing of the South Park Street Property was "Zakiyah S. Islam" while the spelling of her name for the closing of the Mountain Drive Property was "Zakiyya Islam."

Furthermore, Berger prepared and signed a HUD–1 Settlement Statement on the Alexander Street Property, which indicated that a closing had taken place on December 14, 1999 on the property and that Towns had sold it to Brenda Sandiford. On December 20, 1999, Berger faxed the HUD–1 Settlement Statement to Edward Dahan and Moskowitz, who then faxed it to the plaintiff on the following day. On June 22, 2000, Essex County Tax Assessor informed Golden First that Towns still owed money on the Alexander Street Property. The next day, Golden First ran a credit report on Towns, which revealed that he resided at the Alexander Street Property. The credit report also indicated that the prior mortgage loan on the Alexander Street Property was still open and current, contrary to what was indicated on the HUD–1 Settlement Statement.

In addition, as described above, when Flaherty spoke to Moskowitz that Golden First wanted 21st Century to repurchase the Ridge Avenue Property loan, Moskowitz responded that he would close on the Alexander Property "soon," thereby indicating that the facsimile sent by Berger, which was eventually faxed to Golden First, misled the plaintiff into believing that the Alexander Street Property was sold and closed. Given that the HUD–1 Settlement Statement was prepared and signed by Berger and that he acted as the closing agent for both the Ridge Avenue Property and the Alexander Street Property, the Court finds that Berger knew that as a condition for closing the Ridge Avenue Property, the plaintiff required Towns to close the sale of the Alexander Property. Furthermore, viewing all inferences in favor of the plaintiff, the Court finds that the pleadings sufficiently allege that he knew that the HUD–1 Settlement Statement he faxed was false and that the fax would mislead the plaintiff into thinking that the condition for Ridge Avenue Property had been met. Accordingly, the Court finds that the amended complaint

sufficiently alleges a claim of fraud against Berger.

### 2. The Plaintiff's Claim for Punitive Damages

■ The Dahan defendants and Berger also move to dismiss the plaintiff's fifth cause of action which asserts a separate punitive damages claim based on the alleged fraud. They are correct in asserting that it is well-established that there exists no separate cause of action for punitive damages. *Bologna v. Allstate Ins. Co.,* 138 F.Supp.2d 310, 327 (E.D.N.Y.2001) (citing *Rocanova v. Equitable Life Assurance Soc'y of the United States,* 83 N.Y.2d 603, 616–17, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994)). A demand for punitive damages " 'is parasitic and possess no viability absent its attachment for a substantive cause of action.' " *Id.* (quoting *Rocanova,* 83 N.Y.2d at 616, 612 N.Y.S.2d 339, 634 N.E.2d 940). Thus, the motion to dismiss the plaintiff's separate cause of action for punitive damages is granted. However, because the Court must construe the amended complaint in the most favorable light in favor of the plaintiff, it interprets Golden First's cause of action for punitive damages as being as part of its fraud claims.

### 3. The Plaintiff's Claim for Negligence against Berger

■ Berger moves to dismiss the plaintiff's claim for negligence. In order to establish a claim of negligence under New York law, the plaintiff must show: (1) a duty owed to the plaintiff by the defendant; (2) breach of that duty; and (3) injury substantially caused by the breach. *Dooner v. Keefe, Bruyette & Woods, Inc.,* 157 F.Supp.2d 265, 285 (S.D.N.Y.2001) (citing *Curley v. AMR Corp.,* 153 F.3d 5, 13 (2d Cir.1998)).

A review of the amended complaint shows that the plaintiff has not sufficiently alleged a negligence cause of action. The amended complaint asserts only that "Berger owed a duty to Golden National to use due care in the performance of its duties." This bald assertion fails to demonstrate that he owed the plaintiff a duty of care. In addition, the complaint is permeated with allegations of intentional conduct rather than negligence. Accordingly, Berger's motion to dismiss the claim for negligence is granted.

### B. Berger's Motion to Transfer Venue

■ Section 1404(a) provides that a court may transfer an action "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Because Golden First does not dispute that this action could have been brought in New Jersey, the Court concludes that it may consider Berger's motion.

■ The defendant has the burden of establishing the propriety of transfer by a clear and convincing showing. *Ford Motor Co. v. Ryan,* 182 F.2d 329, 330 (2d Cir.) *cert. denied,* 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950). To determine whether transfer would be appropriate, courts consider the following factors: (1) the convenience of the parties; (2) convenience of the witnesses; (3) relative means of the parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) attendance of witnesses; (6) the weight accorded to the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) trial efficiency; and (10) the interest of justice, based on an assessment of the totality of material circumstances. *H.D. Brous & Co., Inc. v. Synthesys Secure Technologies, Inc.,* 229 F.Supp.2d 191, 198 (E.D.N.Y.2002). Courts have discretion in balancing these factors. *Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 561 (S.D.N.Y.2000).

As stated above, a party seeking a transfer under Section 1404(a) bears the burden to make a "clear" showing that transfer would be appropriate. Furthermore, the party must support the application with an affidavit containing detailed factual statements relevant to the factors set forth above, including the potential principal witnesses expected to be called and general statement of the substance of their testimony. *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978). Berger has failed to make this showing.

Berger argues that because all of the defendants reside in New Jersey and the alleged fraud occurred in New Jersey, a balancing of the factors tips in favor of transferring venue. Although Berger asserts, in support of his argument, that all the defendants reside in New Jersey, the Court notes that all of the Dahan defendants oppose a change of venue and have asserted that the present venue is more convenient for them. Furthermore, Berger's motion to transfer is not supported by any sworn affidavit containing detailed factual statements relevant to the factors outlined above. Nor is there an affidavit that contains a list of potential principal witnesses expected to be called and a general statement of the substance of their testimony. In addition, the Court notes that "[w]here the balance of convenience is in equipoise, plaintiff's choice of forum should not be disturbed." *Ayers v. Arabian American Oil Co.*, 571 F.Supp. 707, 709 (S.D.N.Y.1983). Accordingly, based upon the totality of the circumstances and especially given the absence of any affidavits by Berger relating to the ten factors outlined above and the Dahan defendants' opposition, Berger's motion to transfer venue to New Jersey is denied.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the Dahan defendants' motion to dismiss the claim of fraud is **GRANTED** in part as to Stewart Dahan and **DENIED** in part as to the remaining Dahan defendants; and it is further

**ORDERED,** that the Dahan defendants' motion to dismiss the punitive damages claim is **DENIED** insofar as it is a part of the fraud claims; and it is further

**ORDERED,** that Berger's motion to dismiss the claim of fraud is **DENIED;** and it is further

**ORDERED,** that Berger's motion to dismiss the punitive damages claim is **DENIED** insofar as it is a part of the fraud claims; and it is further

**ORDERED,** that Berger's motion to dismiss to dismiss the negligence claim is **GRANTED;** and it is further

**ORDERED,** that Berger's motion to transfer venue to New Jersey is **DENIED;** and it is further

**ORDERED,** that the parties are directed to contact United States Magistrate Judge Thomas Boyle forthwith to set up a schedule for discovery; and it is further

**ORDERED,** that the Clerk of the Court is directed to amend the caption of the complaint to read as follows:

GOLDENFIRST MORTGAGE CORP., f/k/a GOLDEN NATIONAL MORTGAGE BANKING CORP., Plaintiff,

against

MITCHELL H. BERGER, ESQ., EDWARD DAHAN, SHOLOM "SOL" MOSKOWITZ, BRENT W. HINDS, ZAKIYAH S. ISLAM, TERRI COOPER, MICHAEL D. TOWNS, ROSEMARIE TASSIELLI, 21st CENTURY MORTGAGE, INC., DAHAN & ASSOCIATES, INC., DAHAN & ASSOCIATES MORTGAGE COMPANY, LLC, DAHAN & ASSOCIATES CREDIT REPAIR CORP., SELECTIVE REAL-

TY INC., HASSAN ABDULLAH, AMERICAN DREAM REALTY, LLC, and YANK AMENDOLA, Defendants.

**SO ORDERED.**