Steve **LEVY,** in his Official Capacity as Suffolk County Executive, and the County of Suffolk, Plaintiffs,

v.

John G. **ROWLAND,** as Governor of State of Connecticut, the State of Connecticut, Department of Environmental Protection of the State of Connecticut, and Richard Blumenthal, as Attorney General of the State of Connecticut and Arthur J. Rocque, Jr. individually and in his capacity as Commissioner of Department of Environmental Protection, Defendants.

No. 04–CV–2219 DRH WDW.

United States District Court, E.D. New York.

March 21, 2005.

Office of the Suffolk County Attorney by William G. Holst, Hauppauge, NY, for Plaintiffs.

State of Connecticut Office of the Attorney General by Sharon Scully, Hartford, CT, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

HURLEY, District Judge.

Plaintiffs Steve Levy and the County of Suffolk, New York (collectively "Plaintiffs") commenced this action alleging violations of the Interstate Commerce Clause, the preemption doctrine, and of their civil

rights under 42 U.S.C. § 1983. Presently before the Court is Defendants' motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6).

## BACKGROUND

### I The Parties

Plaintiff Steve Levy is the duly elected County Executive of the County of Suffolk. Plaintiff County of Suffolk is a municipal corporation organized and existing pursuant to the laws of the State of New York, with offices and principal places of business located in Hauppauge and Riverhead, New York. Suffolk County, with approximately 1.4 million residents, consists of ten towns: Huntington, Babylon, Smithtown, Islip, Brookhaven, Riverhead, Southold, East Hampton, Southampton, and Shelter Island. The complaint alleges that Suffolk County is a large consumer of electrical energy, paying approximately sixteen to eighteen million dollars per year in electrical consumption costs. (Am.Compl.¶¶ 5–8.)

Defendant State of Connecticut is a governmental entity, located in Hartford, Connecticut. Defendant Department of Environmental Protection for the State of Connecticut ("CT DEP") is a governmental agency charged with making environmental determinations on behalf of the State of Connecticut. (*Id.* ¶ 8.)

The individual defendants are members of the Connecticut State government, all located in Hartford, Connecticut. Specifically, Defendant John. G. Rowland ("Rowland"), as the former Chief Executive Officer of the State of Connecticut. Defendant Richard Blumenthal ("Blumenthal") is the Chief Legal Officer for the State of Connecticut, and Defendant Arthur J. Rocque, Jr. ("Rocque"), is the Chief Environmental Protection Officer.

### II The Allegations

According to the complaint, on July 24, 2001, Cross–Sound Company, LLC ("Cross Sound") applied to the Connecticut Siting Council ("Siting Council") for a certificate of environmental compatibility and public need, pursuant to Connecticut General Statutes Section 16–50p(c)(2) to "construct, operate, and maintain a 24–mile 330 megawatt, bi-directional, high voltage, direct current and fiber optic submarine electric transmission system in the Long Island Sound (the "Cable") connecting the New England regional transmission system at a point in New Haven, Connecticut with the New York regional transmission system at a point in Brookhaven, New York." (Am.Compl.¶ 11.)

On January 3, 2002, the Siting Council approved Cross–Sound's application,[1] subject to certain conditions, including approval from the CT DEP and the United States Army Corp of Engineers ("Army Corp"). Both agencies subsequently issued authori-

1. The complaint alleges that "The Siting Council found that the Project's benefits decidedly outweighed any adverse impact on the environment. For example, the Siting Council found that any impact to shellfish beds would be 'minimal' and that there would be no effect on lobsters. The agency similarly ascertained that there would no effect on any endangered or threatened species. It concluded that the Project's effects on the environment would not be unreasonable when compared to its benefit. The Siting Council determined that the effects associated with the Project, 'including effects on the natural environment; ecological integrity and balance; ... air and water purity; fish and wildlife; and public health and safety are not disproportionate either alone or cumulatively with other effects compared to need, are not in conflict with the policies of the State concerning such effects, and are not sufficient reason to deny the application.'" (Am. Compl.¶ 14.)

zations or permits to allow installation of the Cable. (*Id.* ¶ 13.) Additionally, Cross Sound sought and received authorizations or permits for the Cable from the New York State Public Service Commission (N.Y.PSC") the New England Independent Systems Operator ("NE–ISO") and the New York Independent System Operator ("NY–ISO"). NE–ISO and NY–ISO are not-for-profit, private corporations managing the electric transmission systems in their respective regions.

The Federal Energy Regulatory Commission ("FERC") also authorized the Cable and approved the rates, terms and conditions of its transmission service. (*Id.* ¶ 16.)

The complaint alleges that "[a]s installed, the Cable complies with all permit requirements, including provisions that specify a process for modification of the permits' technical specifications. Compliance with these technical specifications is to be achieved on or before March 17, 2005." (*Id.* ¶ 17.) Further, "[t]he Army Corp has advised that the Cable can be lawfully operated while modifications are made during the time of the existing permit." (*Id.* ¶ 18.)

Plaintiffs allege that the Defendants have utilized a series of unlawful moratoria to interfere with the operation of the Cable, pursuant to Connecticut General Statutes Section 25–157.[2] More specifically, Plaintiffs alleged that Rowland and the State of Connecticut issued a moratorium to temporarily halt new activity related to electrical, gas pipeline, and telecommunication lines for a period from June 3, 2002 to June 3, 2003. Thereafter, Plaintiffs allege, Defendants unreasonably extended its moratorium on a yearly basis. The moratorium has since been renewed and is scheduled to be renewed for a third year for the period of June 3, 2004 to June 3, 2005.[3] (Am.Compl.¶¶ 22–23.)

The complaint alleges that the moratorium purportedly was enacted to allow for environmental assessments. However, Plaintiffs claim that the environmental assessments were conducted during the initial moratorium and yet Defendants are seeking to extend it further. (*Id.* ¶¶ 24–25.)

On August 14, 2003, residents of Suffolk County and a majority of residents in the northeastern states were denied electricity

---

**2.** Conn. Gen.Stat. § 25–157 provides, in relevant part:

Notwithstanding any other provision of the general statutes, no state agency, including, but not limited to, the Department of Environmental Protection and the Connecticut Siting Council, shall consider or render a final decision for any applications relating to electric power line crossings, gas pipeline crossings or telecommunications crossings of Long Island Sound that have required or will require a certificate issued pursuant to section 16–50k or approval by the Federal Energy Regulatory Commission including, but not limited to, electrical power line, gas pipeline or telecommunications applications that are pending or received after June 3, 2002, for a period of three years after June 3, 2002. Such moratorium shall not apply to applications relat-

ing solely to the maintenance, repair or replacement necessary for repair of electrical power lines, gas pipelines or telecommunications facilities currently used to provide service to customers located on islands or peninsulas off the Connecticut coast or harbors, embayments, tidal rivers, streams or creeks.

**3.** Plaintiffs commenced this action in May 2004. In their motion papers, submitted in August 2004, Plaintiffs indicate that "[s]ince the commencement of this litigation, the defendants have acquiesced to the operation of the Cable. However, the Court's intervention is necessary to prevent defendants from future interference with the operations of the Cable and, specifically, from interfering with the technical modifications of the Cable as permitted by the Army Corps." (Pls. Mem. at 4; *see also* Defs. Mem. at 3 n. 2.)

due to a multi-state blackout. As a result of the blackout, an emergency situation was recognized by the United States Department of Energy Commissioner, Spencer Abraham, who issued an order requiring the Cable to be utilized, pursuant to 16 U.S.C. § 824a. According to Plaintiffs, the Cable provided critical power to Connecticut and Long Island to help stabilize the electrical system from August 14, 2003 through May 9, 2004, without any reported adverse environmental consequences. Plaintiffs claim that the Cable has become a critical component of enhancing the reliability of the regional electric grid. (*Id.* ¶¶ 27–28.)

On or about May 7, 2004, the Secretary of the United States Department of Energy terminated the August 2003 order regarding the power emergency. Plaintiffs allege that the State of Connecticut and Rowland, thereafter, without any environmental or other rational basis, reinstituted the moratorium set to expire June 3, 2004. (*Id.* ¶¶ 29–30.)

Plaintiffs' amended complaint alleges that Defendants Rowland, Blumenthal, Rocque, Connecticut, and CT–DEP illegally created a barrier to the transmission of electrical power through the Cable by further seeking to extend the moratorium for an additional year, to June 3, 2005. (*Id.* ¶¶ 30–31.) Although the parties' briefs indicate that the Cable is currently operating, Plaintiffs seek court intervention to ensure the Defendants will not, at a later date, impose another moratorium.

Plaintiffs allege that Defendants' actions have caused and will continue to cause injury to the residents of Suffolk County. Specifically, Plaintiffs claim that "the Cable is essential in providing reliable electric power to the residents of Suffolk County given a demonstrated shortage of generation and transmission facilities. Cross Sound responded to and corrected 17 unanticipated reactive power problems during the nine months the Cable was in operation. Both Connecticut and Long Island relied on the Cable to provide reactive power for voltage support on a preventative basis numerous times. The Cable has proven itself necessary to avert loss of power, whether or not the causes giving rise to the August 2003 blackout have now been identified." (Am. Compl. ¶¶ 33–35.)

Plaintiffs claim that Cross Sound is currently the only operating system in Connecticut or Long Island capable of providing dynamic reactive power support during sensitive energy demand periods. Further, they allege that the reliability of bulk power provided by the Cable is extremely important to Suffolk County and Suffolk County's electric consumers. Plaintiffs allege that turning off of the Cable increases the probability of blackouts, especially as demands increase with warmer weather. Plaintiffs also claim that failure to energize the Cable has significant impacts upon the health, safety, security, and economic well being of Suffolk County and its residents. Additionally, Plaintiffs claim, by not being able to expand the transmission capacity between New York and New England, electrical transmission congestion will continue to exist, increasing short-run generation costs and increasing the future occurrence of blackouts.

Plaintiffs' first cause of action is that Defendants have violated the Interstate Commerce Clause, United States Constitution, Article I, Section 8, clause 3, by "their unlawful and unreasonable refusal to allow the Cable to operate and transmit electrical energy between New England and Long Island." (*Id.* ¶ 20.)

Plaintiffs allege that the burden imposed by the Defendants on interstate commerce is clearly excessive in relation to the purported local benefits of resolving the free

flow of electricity between New England and Long Island. They claim that such a burden on interstate commerce should not be tolerated given the claimed local interest, i.e. environmental concerns. Further, Plaintiffs claim that the Cable modifications sought by Defendants, can clearly be promoted without the continuation of the moratorium. In fact, Plaintiffs allege,. the moratorium prevents such modifications. (*Id.* ¶ 39.)

Plaintiffs claim that Defendants' actions violate the Commerce Clause by prohibiting the interstate flow of electricity; that Defendants' actions are not a result of a legitimate state interest; and that Defendants' actions discriminate against interstate commerce. (*Id.* ¶ 40.)

Plaintiffs further allege that no legitimate local interest or purpose can be found for Defendants' actions in that the State of Connecticut initially approved the permit for the Cable; the actions do not regulate evenhandedly; the actions effect interstate commerce in non-incidental ways, and the resulting burden on interstate commerce is excessive compared to local benefits. (*Id.* ¶ 41.)

Plaintiffs claim that Defendants' violation of the Interstate Commerce Clause damages the residents of Suffolk County and jeopardizes the health, safety, and welfare of Suffolk County and its residents. (*Id.* ¶ 42.)

For their second cause of action, Plaintiffs allege that Defendants' actions are "ultra vires in that they contravert [sic] approvals by federal agencies authorized to regulate the transmission and distribution of electrical power as well as approvals by federal agencies regulating undersea lands in navigable waterways." (Am. Compl.¶ 44.) Plaintiffs claim that Defendants' actions are in violation of the pre-emption doctrine, in that they conflict with the federal government's energy policy concerns and with the Army Corps determinations. (*Id.* ¶ 45.) Plaintiffs's third cause of action alleges that Defendants are liable for damages pursuant to 42 U.S.C. § 1983.

## DISCUSSION

### I Alleged Failure to State A Claim

The court may not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *King v. Simpson,* 189 F.3d 284, 286 (2d Cir.1999); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.; Jaghory v. New York State Dep't. of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). The court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999); *Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999).

The Commerce Clause provides that "Congress shall have Power ... [t]o regulate Commerce with foreign Nations and among the several States...." U.S. Const. Art. I, § 8, cl. 3. The dormant Commerce Clause limits a state's power to take actions impacting interstate commerce. *See Hughes v. Oklahoma,* 441 U.S. 322, 326, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979); *Oregon Waste Sys., Inc. v. Department of Envtl. Quality of the State of Oregon,* 511 U.S. 93, 98, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). Specifically, a state regulation which discriminates against, or places an unjustifiable burden on, the flow of goods interstate, is unconstitutional under the

Commerce Clause. *Gary D. Peake Exca-vating, Inc. v. Town of Hancock,* 93 F.3d 68, 73 (2d Cir.1996).

■ A state regulation violates the dormant Commerce Clause if: (1) it "clearly discriminates against interstate commerce in favor of intrastate commerce," in which case it is "virtually invalid per se"; (2) "it imposes a burden on interstate commerce incommensurate with the local benefits secured"; or (3) "it has the practical effect of 'extraterritorial' control of commerce occurring entirely outside the boundaries of the state in question." *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 217–18 (2d Cir.2004) (citations and internal quotations omitted).

■ When viewing Plaintiffs' complaint most favorably, as the Court must in a 12(b)(6) context, Plaintiffs have stated a violation of the Commerce Clause.[4] As enumerated in the lengthy background section above, Plaintiffs have alleged that the moratorium, enacted under Connecticut General Statutes Annotated Section 25–157, imposes a burden on the flow of electricity to millions of Suffolk County, New York residents, in favor of Connecticut's concern for its environment. Accepting Plaintiffs' allegations as true, the complaint sufficiently states a violation of the Commerce Clause. *See Freedom Hold-ings,* 357 F.3d at 218 ("the minimum showing required ... is that [the state statute] have a disparate impact on interstate commerce") (internal quotation and citations omitted).

Defendants argue that Plaintiffs' complaint does not allege facts which suggest

that Blumenthal, Connecticut's Attorney General, or Rowland, Connecticut's Governor, have taken any improper action associated with the case. To the contrary, the complaint avers specific allegations of Rowland and Blumenthal's participation in the moratorium, which is the basis for the alleged Commerce Clause violation. (*See* Am. Compl. ¶¶ 22, 30–32.) Thus, the complaint sufficiently states claims against Rowland and Blumenthal. Accordingly, Defendants' motion for failure to state a claim is denied.

## II  Alleged Improper Service

Federal Rule of Civil Procedure 4(j) provides that service upon a state agency or official shall be made by: (1) "by delivering a copy of the summons and of the complaint to its chief executive officer" or (2) "by serving the summons and complaint in the manner prescribed by the law of that state for the service of summons or other like process upon any such defendant." Fed.R.Civ.P. 4(j).

Connecticut General Statutes Section 52–64 governs the service of a state agency or official:

> Service of civil process in any civil action or proceeding maintainable against or in any appeal authorized from the actions of, or service of any foreign attachment or garnishment authorized against, the state or against any institution, board, commission, department or administrative tribunal thereof, or against any officer, servant, agent or employee of the state or of any such institution, board, commission, department or administra-

4. Defendants' Memorandum of Law briefly mentions qualified immunity as a defense, but does not adequately address the issue with regard to the individual defendants. (*See* Defs.' Mem. at 14–16.) Thus, the Court will not analyze qualified immunity with regard to those defendants at this juncture. While the

Court considered all of Defendants' arguments, this decision addresses those which are relevant in a motion to dismiss for failure to state a claim, under 12(b)(6). Should Defendants chose to file a motion for summary judgment (or other type of motion), they may raise any appropriate arguments therein.

tive tribunal, as such, may be made by leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General or at his office in Hartford.

Conn. Gen.Stat. § 52–64.

The Affidavits of Service submitted by Plaintiffs indicate that service on the State of Connecticut and Rowland was made by delivering the complaint to "Melinda Decker, as Associate Counsel State of Connecticut." (*See* Defs.' Mem. at Ex. E.) Rocque and the Department of Environmental Protection were served by delivering the complaint to "Carmen Colon, as Secretary, Office of the Commissioner, State of Connecticut Department of Environmental Protection." (*Id.*)

Defendants argue that Rowland and Rocque were not properly served, and thus all claims against them in their official capacities, and claims against the State of Connecticut and the CT DEP should be dismissed. Plaintiffs maintain that their method of service—leaving copies of the complaint at the State's counsel and Rocque's offices—constituted proper service on all four defendants.

■ As indicated above, Plaintiffs had three acceptable service methods to choose from in order to properly serve the State of Connecticut, Rowland, the CT DEP, and Rocque: (1) personal service on Rowland and Rocque; (2) personal service on the Attorney General; or (3) leaving a copy of the complaint at the Attorney General's office. Curiously, Plaintiffs did not comply with any of the enumerated methods. Instead, they left copies of the complaint at Rowland's and Rocque's offices. Clearly, under the applicable federal and Connecticut state statutes, Plaintiffs did not properly serve Rowland, Rocque, the State of Connecticut, or the CT DEP.

Plaintiffs argue that "[t]he method of service prescribed in section 52–64 does not set forth a mandatory requirement for service of process upon a state agency or official; it merely provides for an alternative method that service *may* be perfected." (Pls.' Mem. at 7) (emphasis supplied.) They cite to a decision by the Superior Court of Connecticut, *Paecht v. Kelly,* 1995 WL 70339 (Conn.Super. Feb. 8, 1995).

In *Paecht,* the plaintiff served the defendant Department of Public Safety at its office, rather than serving the Attorney General. The court denied defendant's motion to dismiss, stating "Section 52–64 merely affords a prospective litigant another method of service against a department of the state. This does not mean that service cannot also be affected by actually serving the department at its office, which was done in this case." *Id.*

Although *Paecht* has not been explicitly overruled, several other Connecticut state courts have ruled to the contrary, holding that the language of Section 52–64 is mandatory, and not discretionary. *See Langer v. Comm'n on Human Rights and Opportunities,* 2000 WL 727014, at *2 (Conn.Super. May 17, 2000) (finding that "service of process on the [defendant] was defective because a true and attested copy of the process, including the declaration or complaint, was not left at the office of the Attorney General in Hartford.") (citing Conn. Gen.Stat. § 52–64); *Smith v. Armstrong,* 1999 WL 435845, at *1 (Conn.Super. June 22, 1999) ("Where a particular method of serving process is pointed out by statute, that method must be followed ... Unless service of process is made as the statute prescribes, the court to which it is returnable does not acquire jurisdiction.") (citing cases); *Marion v. Marion,* 1998 WL 351900, at *5 (Conn.Super. June 18, 1998) ("The court finds that service of process was insufficient as it was not

served on the Attorney General as required by General Statutes § 52–64 for actions against state officials."). This Court agrees that the better side of the argument is to require service in strict accordance with rules. Thus, Plaintiffs have not properly served Rowland, the State of Connecticut, Rocque, and the Connecticut Department of Environmental Protection. Accordingly, the Court will grant Defendants' motion, and dismiss Plaintiffs' complaint against Rowland, the State of Connecticut, Rocque, and the Connecticut Department of Environmental Protection. This dismissal is without prejudice to serve the complaint in compliance with the applicable federal and state rules. *See Kirkendall v. University Of Connecticut Health Ctr.*, 205 F.3d 1323, 2000 WL 232071, at *1 (2nd Cir.2000) (affirming district court's dismissal of claims without prejudice against defendant who were not served in accordance with Conn. Gen. Statutes).

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' complaint is DENIED as against Defendant Richard Blumenthal and GRANTED as against all other Defendants.

**SO ORDERED.**