**Angel SANCHEZ, Plaintiff,**

v.

**John P. DOYLE and Sgt. Blake J. Stine, Defendants.**

**No. 3:02CV0351 (JBA).**

United States District Court, D. Connecticut.

March 31, 2003.

Glenn Mead Conway, Knight, Conway & Cerritelli, New Haven, CT, for Plaintiff.

Stephen Richard Sarnoski, Attorney General's Office, Hartford, CT, for Defendants.

### Ruling on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. # 21]

ARTERTON, District Judge.

Plaintiff Angel Sanchez ("Sanchez") brings this suit under 42 U.S.C. § 1983 against defendants John Doyle ("Doyle"), a prosecutor in the Connecticut State's Attorney's Office, and Sergeant Blake J. Stine ("Stine"), an officer in the Connecticut State Police, in both their official and individual capacities, alleging violation of his right to be free from excessive bail under the Eighth Amendment to the United States Constitution in connection with the setting of his bail at $500,000 (cash only) after his arrest for various narcotics related offenses. The first two counts of Sanchez's second amended complaint are directed against Doyle for ordering excessive bail and advising Stine on the subject of plaintiff's bond, and the third is directed against Stine for setting excessive bail after receiving advice from Doyle. Doyle and Stine now move to dismiss all three

counts under Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, their motion [Doc. # 21] is GRANTED.

## I. Factual Background [1]

On January 3, 2002, after execution of a search warrant pursuant to which 548 packets of "purported" heroin were discovered in the bedroom of a house occupied by Sanchez and another individual, Sanchez was arrested and brought to the New Haven Police Department. Sanchez cooperated with police and acknowledged ownership of some incriminating evidence. He was charged with possession of narcotics, possession of narcotics with intent to sell, possession of narcotics within 1,500 feet of a school, possession of narcotics of over one ounce, operating a drug factory, and possession of drug paraphernalia.

While Sanchez was being processed at the New Haven Police Department, Stine set Sanchez's bail at $500,000 cash only after having been advised and/or ordered to do so by Doyle. Sanchez alleges that Doyle and Stine both acted intentionally, willfully, and maliciously in connection with setting the amount and conditions of his bond, ignoring procedures under Connecticut law and acting for the purpose of punishing him. He further alleges bail was set without consideration of his cooperative nature, lack of prior convictions or charges of failure to appear on previous bonds, family ties, employment record, financial resources, mental condition, character, or community ties.

## II. Standard of Review

When deciding a motion to dismiss, the Court must accept all well-pleaded allega-

tions as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.").

## III. Discussion

### A. Eleventh Amendment Immunity

■ Sanchez's second amended complaint brings suit against Doyle and Stine in their dual official and individual capacities. To the extent Sanchez seeks money damages against Doyle and Stine in their official capacities, his suit is barred by the Eleventh Amendment to the United States Constitution because a state official cannot be sued for monetary damages in his or her official capacity under 42 U.S.C. § 1983. *See Will v. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

### B. Judicial Immunity [2]

■ Count three of Sanchez's second amended complaint must be dismissed be-

---

1. All factual allegations are taken from plaintiff's second amended complaint.

2. The parties have not raised the issue of judicial immunity with respect to the functions of Stine's job as a police officer that require him to set bail. The absence of argu-

ment, however, does not preclude the Court from raising the immunity question on its own, especially where the parties have extensively briefed and argued the cousin issue of Stine's qualified immunity. *See Jean v. Collins,* 155 F.3d 701, 705 n. 1 (4th Cir.1998)(en

cause Stine is absolutely immune from personal-capacity suits for monetary damages[3] under 42 U.S.C. § 1983 for actions related to performing the bail setting function assigned to police officers under Conn. Gen.Stat. § 54–63c.[4]

banc)("The officers did plead the defense of qualified immunity, however, and we may properly consider the closely related question of the scope of the immunity to which they are entitled.... Failure to do so here would create the possibility that qualified immunity would incorrectly be accepted as the limit of protection for police officers performing functions that require the exercise of prosecutorial discretion.") (citation and quotation omitted), *judgment vacated on other grounds by* 526 U.S. 1142, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999). The Court also notes that, at the motion to dismiss stage, Stine has not waived the defense of absolute immunity, *see* Fed. R.Civ.P. 12(g) & (h)(2); *Krohn v. U.S.*, 742 F.2d 24, 29 (1st Cir.1984), and that, in contrast to the qualified immunity analysis, it is proper to first address the applicability of absolute immunity before assessing whether a plaintiff's allegations sufficiently allege a constitutional violation, *see Pinaud v. County of Suffolk*, 52 F.3d 1139, 1148 n. 4 (1995).

3. For discussion on the distinction between personal-capacity suits and official-capacity suits, *see generally Hafer v. Melo*, 502 U.S. 21, 25–26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir.1993). Among other differences, official-capacity suits raise immunity issues only under the Eleventh Amendment whereas immunity issues in personal-capacity suits are limited to absolute and qualified immunities. *See id.*

4. Conn. Gen.Stat. § 54–63c provides,

(a) Except in cases of arrest pursuant to a bench warrant of arrest in which the court or a judge thereof has indicated that bail should be denied or ordered that the officer or indifferent person making such arrest shall, without undue delay, bring such person before the clerk or assistant clerk of the superior court for the geographical area under section 54–2a, when any person is arrested for a bailable offense, the chief of police, or his authorized designee, of the police department having custody of the arrested person shall promptly advise such person of the person's rights under section 54–1b, and of the person's right to be interviewed concerning the terms and conditions of release. Unless the arrested person waives or refuses such interview, the police officer shall promptly interview the arrested person to obtain information relevant to the terms and conditions of the person's release from custody, and shall seek independent verification of such information where necessary. At the request of the arrested person, the person's counsel may be present during the interview. After such a waiver, refusal or interview, the police officer shall promptly order release of the arrested person upon the execution of a written promise to appear or the posting of such bond as may be set by the police officer, except that no condition of release set by the court or a judge thereof may be modified by such officer and no person shall be released upon the execution of a written promise to appear or the posting of a bond without surety if the person is charged with the commission of a family violence crime as defined in section 46b–38a, and in the commission of such crime the person used or threatened the use of a firearm. When cash bail in excess of ten thousand dollars is received for a detained person accused of a felony, where the underlying facts and circumstances of the felony involve the use, attempted use or threatened use of physical force against another person, the police officer shall prepare a report that contains (1) the name, address and taxpayer identification number of each person offering the cash bail, other than a person licensed as a *professional bondsman under chapter 533* or a surety bail bond agent under chapter 700f, (3) the amount of cash received, and (4) the date the case was received. Not later than fifteen days after receipt of such cash bail, the police officer shall file the report to the state's attorney for the judicial district in which the alleged offense was committed and to each person offering the cash bail If the arrested person has not posted bail, the police officer shall immediately notify a bail commissioner.

(b) The chief, acting chief, superintendent of police, the Commissioner of Public Safety, any captain or lieutenant of any police department or the Division of State Police within the Department of Public Safety or any person lawfully exercising the powers

■ "It is ... well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir.1999). The critical inquiry focuses on the nature of the act being performed and not on the status of the individual performing it. *See Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)("It is the nature of the function performed, not the identity of the actor who performed it, that informed our immunity analysis."); *see also Cleavinger v. Saxner*, 474 U.S. 193, 201, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)(*quoting Butz v. Economou*, 438 U.S. 478, 511, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978))("absolute immunity flows not from rank or title or 'location within the Government,' ... but from the nature of the responsibilities of the individual official."). Thus, judicial immunity may extend to parole board officials who serve in a quasi-adjudicative function in deciding whether to grant, deny, or revoke parole, *see Montero*, 171 F.3d 757, but not to a judge who performs administrative, legislative, or executive functions, such as discharging an employee, *see Forrester*, 484 U.S. at 229, 108 S.Ct. 538. Under this functional approach, the Court examines "the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and ... seek[s] to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Id.* at 224, 108 S.Ct. 538. To facilitate this dual function/policy analysis, the Second Circuit has extracted a two-part test from the Supreme Court's decision in *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) to determine whether a judge (or other official performing a judicial function) is entitled to absolute immunity: "First, a judge will not be deprived of immunity because the action he took was in error, was done maliciously,[5] or was in excess of his authority; rather, he will be subject to liability only when he has acted in the *clear absence of all jurisdiction* ...[;][s]econd, a judge is immune only for actions performed in his judicial capacity." *Tucker v. Outwater*, 118 F.3d 930, 933 (2d Cir.1997)(quotation and citation omitted)(emphasis in original); *see also Montero*, 171 F.3d at 761 n. 2.[6]

■ Setting bail is a judicial act. *Tucker*, 118 F.3d at 933; *see also Cleavinger*, 474 U.S. at 206, 106 S.Ct. 496 ("Petitioners ... refer to well-known summary and *ex parte* proceedings, such as the issuance of search warrants and temporary restraining orders, and the setting of bail."). As a result, there can be no doubt that, under Conn. Gen.Stat. § 54–63c, Stine's role in setting Sanchez's bail was "functionally comparable to that of a judge." *Butz*, 438 U.S. at 513, 98 S.Ct. 2894. Before a police officer sets bond, Conn. Gen.Stat. § 54–63c(a) requires the officer to attempt to

---

of any such officer may take a written promise to appear or a bond with or without surety from an arrested person as provided in subsection (a) of this section, or as fixed by the court or any judge thereof, may administer such oaths as are necessary in the taking of promises or bonds and shall file any report required under subsection (a) of this section.

5. Thus, Sanchez's allegation that Stine set the bail maliciously and with the intent to punish

Sanchez has no bearing on the absolute immunity analysis. *See Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)("[J]udicial immunity is not overcome by allegations of bad faith or malice....").

6. Sanchez's second amended complaint does not allege that Stine was not an officer authorized to set bail under Conn. Gen.Stat. § 54–63c, rather Sanchez assumes he was. *See* Pl.'s Second Am. Compl. ¶¶ 7, 8, 19, 32.

conduct an interview with the arrested person to obtain information relevant to the terms and conditions of the person's release from custody. Such information includes the nature and circumstances of the offense insofar as they are relevant to the risk of nonappearance, defendant's record of previous convictions, past record of appearance in court after being admitted to bail, family ties, employment record, financial resources, character and mental condition, and community ties. *Compare* Conn. Gen.Stat. § 54–63c(a) *with* Conn. Gen.Stat. § 54–63b(a) and (c). Weighing those factors to determine the appropriate bond demonstrates "independent judgment," *Butz*, 438 U.S. at 513, 98 S.Ct. 2894, especially in light of the fact that, if the arrested person proceeds to post the bail set by the officer, the officer's determination is not reviewed and the arrested person is released until arraignment. Moreover, even when the arrested person cannot post the officer-determined bond and therefore the officer is required to refer the matter to a bail commissioner, *see* Conn. Gen.Stat. §§ 54–63c(a), 54–63d(a), & 54–63b(a), the police department retains statutory discretion to advise the state's attorney of its objection to the redetermination of the bail commissioner and the state's attorney may then authorize the police department to delay release pending a hearing before a superior court judge, *see* Conn. Gen.Stat. § 54–63d(d).[7] In setting bail, therefore, officers like Stine cannot be said to perform merely administrative functions such as scheduling or making recommendations, *see King v. Simpson*, 189 F.3d 284, 288 (2d Cir.1999), but rather are serving independent judicial functions replete with the exercise of independent judgment in setting and reviewing bail conditions.

Stine's "clear absence of all jurisdiction" is plead in Sanchez's second amended complaint with allegations that Stine violated the procedures and substance of Conn. Gen.Stat. § 54–63c when setting bail for Sanchez. He first claims that Stine had no authority under that statute to set a cash only bond. However, the statute imposes no such limitation, *see* Conn. Gen.Stat. § 54–63c(a)("After such waiver, refusal or interview, the police officer shall promptly order release of the arrested person upon the execution of a written promise to appear or the posting of such bond as may be set by the police officer . . . .").

Sanchez further alleges that it was improper for Stine to seek advice from a state's attorney prior to setting Sanchez's bail because the statute only permits Stine to contact a state attorney to object to a bail redetermination made by a bail commissioner. The Court disagrees. Although the statutory structure of Conn. Gen.Stat. § 54–63c does not contemplate or require an officer to contact a state's attorney prior to a bail commissioner's determination, nowhere does it preclude an officer from doing so.

Sanchez also alleges that Stine set the $500,000 cash only bail in violation of Conn. Gen.Stat. § 54–63c because he considered only the nature and circumstances of the offense but failed to take into account Sanchez's lack of previous criminal record and his personal circumstances. While Conn. Gen.Stat. § 54–63c requires the officer to take those factors into consideration, if such details are provided, *compare* Conn. Gen.Stat. § 54–63c(a) *with*

---

7. Conn. Gen.Stat. § 54–63d(d) provides,

"The police department shall promptly comply with the order of release of the bail commissioner, except that if the department objects to the order or any of its conditions, the department shall promptly so advise a state's attorney or assistant state's attorney, the bail commissioner and the arrested person. The state's attorney or assistant state's attorney may authorize the police department to delay release, until a hearing can be had before the court . . . ."

Conn. Gen.Stat. § 54–63b(a) & (c), this allegation does not constitute a claim of clear absence of all subject matter jurisdiction because the unlawful omissions here relate to the general function of setting bail. *See Mireles*, 502 U.S. at 13, 112 S.Ct. 286; *Tucker*, 118 F.3d at 934–36.[8]

Granting absolute immunity to Stine for performing the bail related function of his position serves the underlying purpose for judicial immunity, which is to "free[ ] the judicial process from harassment or intimidation," *Forrester*, 484 U.S. at 226, since "the nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have." *Id.* "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits." *Id.* at 226–27, 108 S.Ct. 538; *see Montero*, 171 F.3d at 760. These concerns also have applicability to police officers who would otherwise potentially be subjected to suit by any individual disappointed with a bail determination which he or she could not post.

In addition, safeguards are in place to adequately protect against constitutional violations which reduce the need for private damage actions. *See Butz*, 438 U.S. at 512, 98 S.Ct. 2894. Counsel may be present during the bail interview, *see* Conn. Gen.Stat. § 54–63c(a), the arrested person has a right to prompt review of the officer's bail determination if bond has not been posted, *see* Conn. Gen.Stat. §§ 54–63c(a) & 54–63d(a), and, should a prosecutor authorize delaying release after a redetermination by a bail commissioner that is objectionable to the police department, *see* Conn. Gen.Stat. § 54–63d(d), such delay lasts only "until a hearing can be had before the court then sitting for the geographical area ... or, if the court is not then sitting, until the next sitting of said court." *Id.*

Finally, Sanchez's second amended complaint states in the prayer for relief that he is seeking injunctive remedies. *See* Pl.'s Second Am. Compl. at 15. Although prior to 1996, absolute immunity did not shield a judge in a § 1983 suit from responsibility for attorney fees sought by a prevailing party or from appropriate injunctive relief, *see Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), amendments to 42 U.S.C. § 1983 now preclude such relief against a judicial officer acting in a judicial capacity unless a declaratory decree was violated or declaratory relief was unavailable. 42 U.S.C. § 1983; *see Montero*, 171 F.3d at 761. As Sanchez alleges no violation of a declaratory decree and no unavailability of declaratory relief, any claim he might assert for injunctive relief against Stine is barred. *See Montero*, 171 F.3d at 761.

## C. Prosecutorial Immunity

 Doyle is entitled to absolute immunity with respect to counts one and two of Sanchez's second amended complaint because ordering[9] or advising Stine

---

8. Similarly, the Court notes that, even if Stine were prohibited under Connecticut law from setting an all cash bond and from contacting a state attorney before setting any bond, legal conclusions with which the Court disagrees, *see supra* at p. 272, both would constitute actions in excess of his authority, since Conn. Gen.Stat. § 54–63c clearly grants constitutes a grant of general subject matter jurisdiction over bail to authorized police officers. *See*

*Tucker*, 118 F.3d at 935–36; *see also Jacobson v. Schaefer*, 441 F.2d 127 (7th Cir.1971)(absolute immunity shields county judge who set bail with unlawful conditions).

9. As clarified by his second amended complaint and opposition to defendants' motion to dismiss, Sanchez uses the word "order" in the sense of forceful urging as opposed to unilateral imposition of a decision through a

how to set Sanchez's bail constitutes legal advice provided during the judicial phase of the criminal process by Doyle in his advocacy role on behalf of the State of Connecticut. Absolute prosecutorial immunity shields conduct that can be characterized as " 'intimately associated with the judicial phase· of the criminal process,' " *Buckley v. Fitzsimmons*, 509 U.S. 259, 270, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)(*quoting Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)), or alternatively formulated as acting in a " 'role as advocate for the State.' " *Buckley*, 509 U.S. at 271, 113 S.Ct. 2606 (*quoting Burns v. Reed*, 500 U.S. 478, 491, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991)). Thus, "prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " *Pinaud*, 52 F.3d at 1147 (*quoting Burns*, 500 U.S. at 486, 111 S.Ct. 1934). As with judicial immunity, the prosecutorial immunity inquiry is a functional one, concentrating on " 'the nature of the function performed, not the identity of the actor who performed it,' " *Buckley*, 509 U.S. at 269, 113 S.Ct. 2606 (1993)(*quoting Forrester*, 484 U.S. at 229), or the actor's intent or motive.[10]

Doyle argues that ordering and/or advising Stine to set an excessive bond without

consideration of all statutory factors must be dismissed under *Pinaud*, 52 F.3d at 1149, which held that prosecutors alleged to have improperly sought to increase plaintiff's bail were protected by absolute immunity since "actions in connection with a bail application are best understood as components of the initiation and presentation of a prosecution." *Id.*[11] Although ordering or advising a particular level or terms of bail to be set by the official with actual responsibility for setting bail falls squarely within a traditional role of a prosecutor as an advocate of the state during the judicial phase of a criminal proceeding, Sanchez seeks to avoid the application of absolute immunity here by asserting that Doyle is ·precluded by the statutory scheme from providing input at this stage of the bail proceedings and thus any such input must be characterized as legal advice for which the prosecutor is only entitled to qualified immunity under the Supreme Court's decision in *Burns*, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547. Although *Pinaud* is not procedurally on all fours with Sanchez's allegations, its reasoning warrants granting absolute immunity.

*Pinaud* involves a bail application made by a district attorney to increase bail that had already been set, and, as such, implicates a procedural stage subsequent to the one presented in this case but more analogous to the role of a Connecticut state's attorney under Conn. Gen.Stat. § 54–69

rubber stamping process. *See* Pl.'s Second Am. Compl. ¶ 19 (alleging Stine initiated contact with Doyle for purpose of obtaining input on Sanchez's bond determination); Pl.'s Opp'n to Defs.' Mot. to Dismiss at 5–6 (referring to deposition testimony in another case in which a certain officer Canning testified that he always set cash bonds on the advice of a prosecutor and consulted with Defendant Doyle concerning setting a cash bond, and accordingly concluding that "... Defendant Doyle's actions can best be characterized as legal advice").

10. *See Imbler*, 424 U.S. at 427, 96 S.Ct. 984 ("[T]he genuinely wronged defendant [is] without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty.").

11. *See also Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir.1987)("Other acts encompassed within the protected function of initiating a case include ... advocating a particular level of bail....") *overruled on other grounds by Burns*, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547, and cited and partially quoted with approval in *Pinaud*, 52 F.3d at 1149.

(which permits both a prosecutor and an accused to bring an application to the court to contest the excessiveness or insufficiency of a bond determination). As such, Doyle's input into the judicial process of setting bail upon inquiry by the officer statutorily authorized to set bail and at a stage in which the statutory scheme does not give Doyle a formal role constitutes providing legal advice to the bail setter. However, the Court disagrees with plaintiff's assertion that *Burns* precludes absolute immunity for such advice. Rather, under *Pinaud,* as to prior bail proceedings, such advisory conduct is still a component of the initiation and presentation of a prosecution for which the prosecutor is entitled to absolute immunity.

While *Burns* precludes grants of absolute immunity for legal advice given by prosecutors to police during the investigative phase of a criminal case, *see Burns,* 500 U.S. at 492–496, the case is inapplicable to the case at bar because here Doyle provided legal advice to a police officer during the post-arrest bail setting judicial phase of a criminal case and not for an investigatory or administrative purpose. The purpose at this stage is to pursue the arrested person's prosecution by assuring his presence in court since bail "concerns the mechanisms for securing a prisoner's availability for prosecution." *Pinaud,* 52 F.3d at 1150; *see Spivey v. Robertson,* 197 F.3d 772, 774–76 (5th Cir.1999)(prosecutor entitled to absolute immunity for providing legal advice to police where, based on facts provided by police, prosecutor informed police what crimes a suspect could be charged with and instructed officers to prepare for submission an affidavit of probable cause for an arrest warrant); *Springmen v. Williams,* 122 F.3d 211, (4th Cir.1997)(assistant state's attorney entitled to absolute immunity where she reviewed police officer's application for a "Statement of Charges and Summons" and advised that its factual contents were sufficient to

warrant filing the application since such advice implicated prosecutor's decision to proceed with a prosecution and not, in contrast with *Burns,* advising police with respect to the investigative phase of a criminal case). This conclusion is bolstered by the policy considerations underlying grants of absolute immunity discussed above in the context of judicial immunity. *See Kalina v. Fletcher,* 522 U.S. 118, 125, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) and *supra* at pp. 272–273.

█ Finally, again Sanchez's second amended complaint includes in his prayer for relief a bare claim for injunctive relief against Doyle, *see* Pl.'s Second Am. Compl. at p. 15, but his second amended complaint lacks any allegations that show Sanchez's standing to seek such relief, e.g., that he remains in custody pursuant to officer Stine's determination, or that there is a real or immediate threat that he will be wronged again by Doyle improperly ordering or advising an officer in connection with setting bail for Sanchez. *See Riverside County v. McLaughlin,* 500 U.S. 44, 51, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991); *Los Angeles v. Lyons,* 461 U.S. 95, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

## IV. Conclusion

For the foregoing reasons, defendants are entitled to absolute immunity and therefore their motion to dismiss is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.