**Edward ROOT, Jr., Plaintiff–Appellant,**

v.

**Timothy LISTON, Defendant–Appellee.**

**Docket No. 05–2004–CV.**

United States Court of Appeals, Second Circuit.

Submitted: Dec. 21, 2005.

Decided: April 6, 2006.

---

Norman A. Pattis, Bethany, CT, for Plaintiff–Appellant.

Robert B. Fiske, III, Assistant Attorney General (Richard Blumenthal, Attorney General, on the brief), Hartford, CT, for Defendant–Appellee.

Before: JACOBS, LEVAL, STRAUB, Circuit Judges.

DENNIS JACOBS, Circuit Judge.

Edward Root appeals from the judgment of the United States District Court for the District of Connecticut (Hall, *J.*), dismissing on summary judgment his § 1983 complaint—alleging fraud, unreasonable seizure, and the setting of unreasonable bond—against Timothy Liston, the Connecticut State's Attorney for the Judicial District of Middlesex. *See Root v. Liston*, 363 F.Supp.2d 190 (D.Conn.2005).

Root was in police custody for a series of vehicle offenses, with $1000 bond set by a judge, when Liston learned that Root may have committed the more serious offense of threatening a prosecutor; believing that Root therefore posed a greater flight risk than previously realized, Liston unilaterally ordered the police to hold Root on $250,000 bond. The district court ruled that Liston was absolutely immune from a damages suit because his actions were prosecutorial in nature and had some colorable jurisdiction under Connecticut law. We affirm on the somewhat different ground that although Liston's actions were judicial in nature, Connecticut law arguably (just arguably) confers on prosecutors a limited power to do what Liston did.

**I**

The facts bearing on absolute immunity are not in dispute. Root was arrested on state charges of Operating Under Suspension, Operating Without Insurance, and having an Expired Emission Sticker, for which he received a court date of July 18, 2001. Root was again arrested on similar charges, and given an additional court date of July 27, 2001. When Root failed to appear on July 18, Judge Carol Wolven signed a re-arrest warrant for the original three charges and an additional count of Failure to Appear. She set the bond amount at $1000.

On Friday morning, July 27, a 9–1–1 dispatcher received a tip suggesting that Root had threatened the life of Senior Assistant State's Attorney Barbara Hoffman ("ASA Hoffman"). When Liston heard about the threat, he notified state police, who began an investigation. Later that morning, the state police told Liston that Root had appeared in court for his July 27 court date, had been arrested by Middletown police on the Failure to Ap-

pear charge, and was being held in state police barracks on the $1000 bond.

Around noon of the same day, Trooper Moysey of the state police called Liston to report that Moysey was the officer who arrested Root on the Failure to Appear charge. Liston then told Moysey that Root was alleged to have threatened ASA Hoffman, that an investigation was under way, that it was getting too late on the Friday to arraign Root on the Failure to Appear charge, and that detectives were on their way to the barracks to interview Root. Critically, Liston added that—on his own authority—he was increasing the amount of Root's bond from $1,000 to $250,000, because the new allegation (the threat against ASA Hoffman) made Root a greater flight risk. Liston instructed Moysey that the bond amount was not to be lowered and that Moysey should contact him if the Bail Commissioner attempted to modify it.

On Saturday, July 28, 2001, Root's lawyer (joined by a bail bondsman) offered to post Root's (original) $1000 bond. The state police officers on duty contacted Liston, who reconfirmed that Root's bond was $250,000. That evening, counsel again tried without success to obtain Root's release on a $1000 bond. Root did not post the higher bond amount, and remained in custody over the weekend.

On Monday, July 30, 2001, Judge Thomas Parker signed an arrest warrant for Root on state charges of Threatening and Disorderly Conduct (based on the alleged threat against ASA Hoffman), with the bond on that warrant set at $100,000. That day, Root was transported to court and served with the warrant in the court cellblock. He was subsequently arraigned before Judge Wolven on charges of Failure to Appear and Threatening and Disorderly Conduct. After oral argument, Judge Wolven set the bond on the Threatening

charge at $250,000, and reimposed the $1,000 bond on the Failure to Appear charge.

On May 29, 2003, Root filed a § 1983 suit in district court, alleging fraud, unreasonable seizure, and the setting of unreasonable bond in violation of the common law of Connecticut and the Constitution. The district court granted Liston's motion for summary judgment on March 28, 2005, on the ground that Liston enjoyed absolute prosecutorial immunity for his actions. Root appeals, asserting that the district court misapplied the standards governing absolute prosecutorial immunity.

## II

This court reviews *de novo* a district court's decision granting summary judgment. *See Aslanidis v. United States Lines*, 7 F.3d 1067, 1072 (2d Cir.1993). Summary judgment may be granted only if there is no genuine issue of material fact to be tried, and the moving party is therefore entitled to judgment as a matter of law. *Id.* In making this determination, "we view the evidence in a light most favorable to ... the non-moving party, and draw all reasonable inferences in his favor." *Id.*

The district court ruled that Liston was entitled to absolute immunity as a prosecutor. *See Root*, 363 F.Supp.2d at 197. Root argues that the power to increase the amount of a bond is not prosecutorial in nature, that prosecutors lack such authority under Connecticut law, and that Liston's conduct was therefore a usurpation of judicial power for which he enjoys no immunity. Liston's argument has force up to a point, but we affirm nevertheless.

"[A]bsolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman*, 424 U.S. 409,

419 n. 13, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Absolute immunity is an extreme protection, insulating the immune party from "any judicial scrutiny of the motive for and reasonableness of official action." *Robison v. Via*, 821 F.2d 913, 918 (2d Cir.1987).

■ The purpose of absolute immunity is not to protect government officials as individuals, but rather to ensure that they can perform their jobs without harassment by civil suits and without intimidation by the threat of suit. *Butz v. Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). In determining whether absolute immunity attaches, we therefore consider "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Under this functional approach, persons enjoy absolute immunity "not because of their particular location within the Government but because of the special nature of their responsibilities." *Butz*, 438 U.S. at 511, 98 S.Ct. 2894.

■ Increasing the bond amount is not among those "actions that are connected with the prosecutor's role in judicial proceedings." *Burns v. Reed*, 500 U.S. 478, 494, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991); *see also Imbler*, 424 U.S. at 430, 96 S.Ct. 984. For the purpose of ascertaining immunity, the prosecutorial role is generally limited to advocacy, *see Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir.1996) (citing *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir.1994)), and the initiation and presentation of a prosecution, *see Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995) (citing cases). In *Pinaud*, we held that absolute prosecutorial immunity protects a prosecutor for advocacy in connection with a bail application—as well as (more generally) for "communications with other officials directly pertaining to mat-

ters of sentencing." *Id.* at 1150. Although Liston's conduct here had to do with the setting of a bond, it was (as Root argues) different in nature from the prosecutor's advocacy for higher bail in *Pinaud*. We find no authority for the idea that modification of a judicially-set bond falls within the ambit of the prosecutorial function. Connecticut law (as discussed *infra*) may arguably authorize prosecutors to modify a prisoner's bond unilaterally under certain circumstances; but such authorization still would not render the act of bond modification *prosecutorial in nature*.

■ At the same time, the conclusion that Liston's conduct was not by nature prosecutorial does not defeat his immunity claim. Under the functional approach that controls the analysis, Liston also enjoys immunity for his (colorably authorized) acts that are judicial in nature, notwithstanding that he is a prosecutor.

The doctrines of absolute prosecutorial and judicial immunity are closely related. *See Imbler*, 424 U.S. at 424 n. 20, 96 S.Ct. 984 ("It is the functional comparability of their judgments to those of the judge that has resulted in both grand jurors and prosecutors being referred to as 'quasi-judicial' officers, and their immunities being termed 'quasi-judicial' as well."). The law nevertheless observes an analytic distinction, and we look to the common law and history to define the bounds of the different immunities. *See Burns*, 500 U.S. at 493, 111 S.Ct. 1934 ("[A]lthough the precise contours of official immunity need not mirror the immunity at common law, we look to the common law and other history for guidance because our role is not to make a freewheeling policy choice, but rather to discern Congress' likely intent in enacting § 1983.") (internal quotation marks and citations omitted).

In *Butz,* the Supreme Court extended the protections of absolute judicial immunity to the judicial acts of administrative hearing examiners performing adjudicatory functions within federal agencies. *See Butz,* 438 U.S. at 514, 98 S.Ct. 2894. Similarly, in *Montero v. Travis,* absolute judicial immunity accorded to parole board officials who "serve a quasi-adjudicative function in deciding whether to grant, deny or revoke parole." 171 F.3d 757, 761 (2d Cir.1999); *see also Scotto v. Almenas,* 143 F.3d 105, 111 (2d Cir.1998) ("[A] parole board official is absolutely immune from liability for damages when he decides to grant, deny, or revoke parole, because this task is functionally comparable to that of a judge.") (internal quotation marks omitted).

■■■ Liston's conduct in ordering the amount of Root's bond increased was judicial in nature. Ordinarily, it is judges who set bail, *see Tucker v. Outwater,* 118 F.3d 930, 933 (2d Cir.1997); *Carino v. Watson,* 171 Conn. 366, 368–69, 370 A.2d 950 (1976); *State v. Vaughan,* 71 Conn. 457, 460–61, 42 A. 640 (1899), and judges enjoy absolute immunity when they do so, *see Tucker,* 118 F.3d at 933. A decision to increase the amount of a bond is inherently "judicial," even when it is made outside the bail application process. *See Forrester,* 484 U.S. at 227, 108 S.Ct. 538 ("[T]he informal and *ex parte* nature of a proceeding has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character."). In sum, under the functional approach to immunity questions, to the extent that Liston's conduct is protected by absolute immunity, it is protected by absolute *judicial* immunity. *Cf. Sanchez v. Doyle,* 254 F.Supp.2d 266, 271–73 (D.Conn.2003) (holding that police officer authorized by Connecticut law to set bond for arrested person enjoys absolute judi-

cial immunity for the setting of such bond); *Clynch v. Chapman,* 285 F.Supp.2d 213, 221–22 (D.Conn.2003) (same).

■■■ Judicial immunity protects the actor unless he " 'acted in the clear absence of all jurisdiction.' " *Tucker,* 118 F.3d at 933 (quoting *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)); *see generally Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 456 F.2d 1339, 1343–44 (2d Cir. 1972). For the purpose of that inquiry, conducted under Connecticut law, Liston's immunity would not necessarily be defeated even by a finding that his action "was in error, was done maliciously, or was in excess of his authority," *Tucker,* 118 F.3d at 933; absolute immunity protects unless the action was "manifestly or palpably beyond his authority," *Spalding v. Vilas,* 161 U.S. 483, 498, 16 S.Ct. 631, 40 L.Ed. 780 (1896).

In determining whether Liston had colorable authority for his actions, we may consider any relevant statutes. *See Schloss v. Bouse,* 876 F.2d 287, 291 (2d. Cir.1989). Connecticut law grants to prosecutors a circumscribed role in setting bond amounts:

§ 54–63d. Release by bail commissioner.

\* \* \* \* \* \*

(d) [i] The police department shall promptly comply with the order of release of the bail commissioner, except that if the department objects to the order or any of its conditions, the department shall promptly so advise a state's attorney or assistant state's attorney, the bail commissioner and the arrested person. [ii] The state's attorney or assistant state's attorney may authorize the police department to delay release, until a hearing can be had before the court then sitting for the geographi-

cal area which includes the municipality in which the arrested person is being detained or, if the court is not then sitting, until the next sitting of said court. [iii] When cash bail in excess of ten thousand dollars is received for a detained person accused of a felony, where the underlying facts and circumstances of the felony involve the use, attempted use or threatened use of physical force against another person, the police department shall prepare a report that contains (1) the name, address and taxpayer identification number of the accused person, (2) the name, address and taxpayer identification number of each person offering the cash bail, other than a person licensed as a professional bondsman under chapter 533 or a surety bail bond agent under chapter 700f, (3) the amount of cash received, and (4) the date the cash was received.

Conn. Gen.Stat. § 54–63d (roman numerals added).

As a threshold matter, § 54–63d(d) appears to apply only when the bail conditions are set by a bail commissioner—a quasi-judicial officer of lower rank than a judge. While this may render the provision inapplicable when (as here) the bond amount is set by a judge, *see supra,* we conclude that Liston's assumption that the provision authorized his conduct was reasonable. Aside from the language of § 54–63d itself, we see no basis in Connecticut law for distinguishing between judges and bail commissioners in terms of

the deference due their actions in the bail context. The only provision of Connecticut law that explicitly limits the authority of non-judges to modify a court-set bond is Conn. Gen.Stat. § 54–63c, which bars such modification by a *police officer.*[1]

Assuming the applicability of § 54–63d(d) when bond is set by a judge, it remains unclear whether the provision authorized Liston's conduct. One interpretation reads sentences [i] and [ii] together to say that, in order for a state's attorney or assistant state's attorney to authorize the police department to delay the release of a prisoner, the police department must first object to the bail commissioner's order of release. The two sentences may also plausibly be read separately, such that the authority of a state's attorney to delay release is not contingent on an objection by the police department: sentence [ii] itself contains no such qualifier, and sentence [iii] of the series is plainly a standalone provision.

We conclude that a reasonable prosecutor in Liston's position could have interpreted § 54–63d(d) as authorizing him to delay a prisoner's release even in the absence of a prior objection by the police department. Such a reading would fit logically with the statute's explicit conferral of the discretion to delay release upon the state's attorney, not upon the police. It is certainly arguable that the mention of the police objection is not intended to limit the discretion given to the state's attorney, but

---

1. § 54–63c provides in pertinent part:

Except in cases of arrest pursuant to a bench warrant of arrest in which the court or a judge thereof has indicated that bail should be denied or ordered that the officer or indifferent person making such arrest shall, without undue delay, bring such person before the clerk or assistant clerk of the superior court for the geographical area under section 54–2a, when any person is arrested for a bailable offense, ... [the authorized] police officer shall promptly order release of the arrested person upon the execution of a written promise to appear or the posting of such bond as may be set by the police officer, *except that no condition of release set by the court or a judge thereof may be modified by such officer ....* (emphasis added).

rather simply recognizes that, under Connecticut's customary procedure, the state's attorney is not ordinarily directly involved in the setting of the initial bond. *See* Conn. Gen.Stat. §§ 54–63c(a), 54–63d(a), (d); *Clynch*, 285 F.Supp.2d at 221–22.

Liston did not delay Root's release, however; he increased the amount of his bond. This distinction does not strike us as material to our analysis here: a delay is the functional equivalent of a bond revocation; an increase in the bond amount is an effective mechanism for achieving delay; and the power to delay is plausibly viewed as greater than the power to increase the amount of a bond. Thus, it was not unreasonable for Liston—perhaps assuming that the greater power included the lesser—to conclude that he had the power to modify the amount of Root's bond.

In sum, Connecticut law authorizes state's attorneys to delay the release of prisoners under certain circumstances. We conclude that Liston possessed colorable authority to increase unilaterally the amount of Root's bond.

We do not hold that Liston acted pursuant to *actual* authority. We are inclined to think that he did not. § 54–63d(d) is designed to permit the state's attorney to preserve the *status quo* when bail conditions perceived as unsatisfactory have been set by a bail commissioner, until review can be had before a judge. In this case, bail was set not by a bail commissioner, but by a judge. We are inclined to think that § 54–63d(d) does not apply to these circumstances. But, because this question is one of state law and is not decisive of this appeal, we need not decide it.

■ The doctrine of absolute immunity precludes Root from recovering damages notwithstanding the possible injustice of leaving a "genuinely wronged defendant without civil redress":

> Despite the unfairness to litigants that sometimes results, the doctrine of judicial immunity is thought to be in the best interests of "the proper administration of justice . . . [, for it allows] a judicial officer, in exercising the authority vested in him [to] be free to act upon his own convictions, without apprehension of personal consequences to himself."
>
> \* \* \* \* \* \*
>
> The fact that the issue before the judge is a controversial one is all the more reason that he should be able to act without fear of suit.

*Stump v. Sparkman*, 435 U.S. 349, 363–64, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (alterations in the original) (quoting *Bradley v. Fisher*, 13 Wall. 335, 80 U.S. 335, 347, 20 L.Ed. 646 (1871)); *see also Montero*, 171 F.3d at 760 ("If parole board officials, like judges, were to fear adverse consequences from their parole decisions, they would experience great difficulty in rendering impartial decisions, a responsibility essential to the proper functioning of the penal system.").

In this case, Liston enjoys absolute immunity because a colorable argument may support an otherwise dubious and aggressive exercise of power. We appreciate that this ruling does not foreclose the risk that prosecutors will misuse their authority. However, this risk is mitigated: Connecticut law authorizes a state's attorney to delay unilaterally a prisoner's release only until "a hearing can be had before the court then sitting for the geographical area which includes the municipality in which the arrested person is being detained or, if the court is not then sitting, until the next sitting of said court," § 54–63d(d); so judicial review of a prosecutor's unilateral decision to modify the bond amount is almost certain to take place within days (as this

case illustrates). Liston increased Root's bond on Friday afternoon; Judge Parker issued an arrest warrant for Root on the Threatening charge on Monday, with bond set at $100,000; and on that same day Judge Wolven increased the bond amount on the Threatening charge to $250,000. The risk of a prosecutor effecting a serious deprivation of rights under these circumstances is low. *Cf. Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (observing that one of the checks on malicious judicial action is "the correctability of error on appeal"); *Forrester,* 484 U.S. at 227, 108 S.Ct. 538 ("Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability.").

The judgment dismissing the complaint is AFFIRMED.